# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| SOUTHWEST ENVIRONMENTAL CENTER, | ) ) ) ) | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| *Plaintiff*, | ) ) | |
| v. | ) ) | 2:18-cv-00632 |
| JEFFERSON BEAUREGARD SESSIONS III, in his official capacity as Attorney General of the United States; KIRSTJEN NIELSEN, in her official capacity as Secretary of the U.S. Department of Homeland Security; JAMES N. MATTIS, in his official capacity as Secretary of the U.S. Department of Defense; and ALEX M. AZAR II, in his official capacity as Secretary of the U.S. Department of Health and Human Services. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Defendants.* | ) | |

## INTRODUCTION

1. Defendants recently adopted a policy of initiating misdemeanor criminal proceedings against any migrant detained along the U.S.-Mexico border, including many who are lawfully seeking asylum. Around the same time, Defendants adopted a policy or practice of indefinitely detaining any migrant charged with a misdemeanor immigration offense until resolution of that charge. These policies (collectively, the "Family Detention Policy") have resulted in a dramatic increase in the number of individuals being detained in facilities across the southwestern United States.

2. The Family Detention Policy is causing grave and irreparable humanitarian harm—particularly, to children who have been separated from their parents by U.S. immigration authorities, or who are being detained for extended periods in prison-type environments. In addition, the Policy is causing, or will imminently cause, irreparable harm to the communities and environment of the Southwest, insofar as it will require Defendants to construct and operate dozens of new detention facilities in this region.

3. The Family Detention Policy is illegal. Although the Policy constitutes a radical departure from past practice and is being treated as binding authority, Defendants have not offered the public notice or the opportunity to comment on it. Indeed, Defendants have not even disclosed the operative policy statements to the public.

4. Plaintiff—a conservation organization whose members will be directly harmed by the Family Detention Policy, including by the construction and operation of new detention facilities in the Southwest—moves to enjoin the Family Detention Policy until such time as Defendants comply with bedrock requirements of administrative law.

**BACKGROUND**

5.     On April 6, 2018, Attorney General Jeff Sessions issued a memorandum entitled "Zero-Tolerance for Offenses under 8 U.S.C. § 1325(a)." The memorandum directed each U.S. Attorney's Office along the U.S.-Mexico border "to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)."[1] In public statements, the Attorney General explained that this policy would ensure that "100 percent of illegal Southwest Border crossings" would be criminally prosecuted.[2]

6.     Following issuance of this memorandum, the U.S. Department of Homeland Security ("DHS") began referring every migrant detained along the U.S.-Mexico border—including many who were lawfully seeking asylum—to the U.S. Department of Justice for prosecution. DHS also adopted a policy or practice of detaining these individuals indefinitely until resolution of these charges. Defendants' actions resulted in an unprecedented number of children being forcibly separated from their parents. In the first two months of this policy, nearly 2,000 children were separated from their parents.[3]

7.     The staggering increase in the number of children being held by U.S. immigration authorities soon overwhelmed the capacity of existing detention facilities. On June 14, 2018, a spokesperson for the U.S. Department of Health and Human Services ("HHS") confirmed that an encampment for children separated from their parents would be constructed at the Tornillo Land

---

[1] Memorandum from Jeff Sessions to Federal Prosecutors along the Southwest Border, *Zero-Tolerance for Offenses under 8 U.S.C. § 1325(a)* (Apr. 6, 2018).

[2] U.S. Dep't of Justice, *Attorney General Sessions Delivers Remarks Discussing the Immigration Enforcement Actions of the Trump Administration* (May 7, 2018).

[3] PBS, *How Trump Family Separation Policy Became What it is Today* (Jun. 14, 2018).

Port of Entry, near El Paso, Texas. The spokesperson stated that the facility would "take in 360 children in the coming days and expand from there."[4] As of June 25, 2018, 326 children were being held at a tent city in Tornillo.[5] Recent reports suggest the facility could be expanded to hold up to 4,000 children.[6]

8. On June 20, 2018, President Trump signed an Executive Order entitled "Affording Congress an Opportunity to Address Family Separation."[7] The Family Separation Order codifies Defendants' policy of detaining migrants indefinitely pending the resolution of misdemeanor charges, with the modification that, "to the extent permitted by law and subject to the availability of appropriations," families will now be detained together. Order § 3(a). The Order also requires the Secretary of Defense to "to provide to the Secretary [of DHS], upon request, any existing facilities available for the housing and care of alien families," and to "*construct* such facilities if necessary and consistent with law." *Id.*, § 3(c) (emphasis added).

9. Although the Order states that it is "the policy of this Administration to maintain family unity," (*id.*, § 1), it does not actually end the practice of family separation. As a coalition of State Attorneys General recently explained, the relief offered by the Order is "illusory" because "almost every provision of the Order is subject to the availability of non-existent resources and

---

[4] Claire Parker, *Trump Administration Makes Site Selection for Tent City Near El Paso To House Immigrant Children Separated from Parents*, TEX. TRIBUNE (Jun. 14, 2018).

[5] Madlin Mekelburg & Aileen B. Flores, *Commander Of Tents At Tornillo, Texas, Calls Family Separations 'Dumb, Stupid'*, EL PASO TIMES (Jun. 25, 2018).

[6] Madlin Mekelburg, *Congressman Will Hurd: Tornillo Tent City Could Expand To 4,000 Beds For Immigrant Kids*, EL PASO TIMES (Jun. 16, 2018).

[7] White House, *Affording Congress an Opportunity to Address Family Separation* (Jun. 20, 2018).

legal authority for indefinite detention [of children] that is contrary to settled law." *Washington v. United States*, 2:18-cv-00939 (W.D. Wash., Jun. 26, 2018) (Doc. 1, ¶ 77). The order is silent on how DHS should proceed if it is unable to detain families together, either because of resource constraints or because the government is unable to obtain modification of the *Flores* settlement, which prohibits DHS from detaining children for more than 20 days. Moreover, nothing in the Order requires the government to reunite families it has already broken apart.

10. On June 21, 2018, the Associated Press obtained a memorandum indicating that the U.S. Department of Defense ("DOD") was preparing to construct facilities to house up to 20,000 migrant children on four military bases, including Fort Bliss, an army base located in El Paso County, Texas and Doña Ana County, New Mexico.[8] On June 25, 2018, the El Paso Times reported that Fort Bliss had been selected as one of two sites to house these children.[9] On June 27, 2018, it was reported that DOD was preparing to house up to 12,000 individuals at Fort Bliss.[10]

11. The Doña Ana Range Complex, which abuts the Organ Mountains-Desert Peaks National Monument in southern New Mexico, was used to hold unaccompanied minors in 2016 and 2017. On information and belief, new detention facilities may be built at the same location.

12. On information and belief, children held under the Family Detention Policy are being housed in conditions that are inhumane and unsanitary. According to U.S. Senator Jeff

---

[8] Robert Burns, *Pentagon Agrees to Provide Space For 20,000 Migrant Children*, AP NEWS (Jun. 21, 2018).

[9] Kyle Jones & Michelle Gaitan, *Fort Bliss, Goodfellow Military Bases In Texas Will House Immigrants, Pentagon Confirms*, EL PASO TIMES (Jun. 25, 2018).

[10] Tom Vanden Brook, *Fort Bliss In Texas May House 12,000 Migrants Detained At The Border*, USA TODAY (Jun. 27, 2018).

Merkley, the facility in McAllen, Texas currently being used to house children who have been separated from their parents resembles a "dog kennel." Merkley explained that children had nothing with them in their cells but their clothes and a space blanket. The floors were not padded and some children were seen lying on the ground. Children as young as four years old were being detained in this facility.[11]

13.     On June 26, 2018, Judge Dana M. Sabraw issued a preliminary injunction preventing the government from separating children from their parents, and requiring the government to begin reuniting families it had previously broken apart. *See Ms. L. v. U.S. Immigration & Customs Enf't*, No. 18-CV-0428-DMS (MDD), 2018 WL 3129486 (S.D. Cal., Jun. 26, 2018). The court determined that plaintiffs were likely to prevail on their claim that Family Detention Policy was "so egregious, so outrageous, that may fairly be said to shock the contemporary conscience." *Id.* at *8 (citation and quotation marks omitted). However, the preliminary injunction does not prevent the Trump Administration from enforcing its zero-tolerance policy, from detaining families together, or from constructing new detention facilities.

## JURISDICTION

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346(a)(2). The causes of action arise under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, *et seq.* The requested relief is authorized by 5 U.S.C. §§ 705–706, especially § 706(2)(D).

…

…

---

[11]     Emily Tillett, *Sen. Jeff Merkley Says Images of Migrant Processing Center are "Seared" in His Mind*, CBS NEWS (Jun. 6, 2018).

**VENUE**

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1)(B), because Defendants are federal officers sued in their official capacities, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.  Between July and November 2017, Defendants tested their family separation and detention policies in the El Paso Border Patrol Sector, which includes this District and adjacent areas of far-west Texas.[12]  Approximately 50 mothers who have been separated from their children by U.S. immigration authorities are being held at a private jail in this District.[13]  On information and belief, Defendants intend to build tent cities and detention facilities in this District, including on parts of Fort Bliss that were used to house unaccompanied minors in 2016 and 2017.

16.     Alternatively, venue is proper under 28 U.S.C. § 1391(e)(1)(C) because Defendants are federal officers sued in their official capacities, Plaintiff resides in this District, and no real property is involved in this action.

**PARTIES**

17.     Plaintiff SOUTHWEST ENVIRONMENTAL CENTER ("SWEC") is a non-profit conservation organization dedicated to the protection and restoration of native wildlife and their habitats in the Southwest.  SWEC has more than 10,000 members and online activists.  SWEC is headquartered in Las Cruces, New Mexico.

---

[12] *See* Lisa Riordan Seville & Hannah Rappleye, *Trump Admin Ran 'Pilot Program' for Separating Families in 2017*, NBC NEWS (Jun. 29, 2018).

[13] *See* Jonathan Blitzer, *Mothers in a New Mexico Prison Do Not Know How to Find their Children*, NEW YORKER (Jun. 21, 2018).

18. SWEC's members and staff live in or regularly visit the U.S.-Mexico borderlands region in New Mexico and Texas. SWEC's members and staff regularly use the myriad federal, state, and local protected lands along the U.S.-Mexico border in New Mexico and Texas for hiking, camping, viewing and studying wildlife, photography, hunting, horseback riding, and other scientific, vocational, and recreational activities. SWEC's members and staff derive recreational, spiritual, professional, scientific, educational, and aesthetic benefits from their activities in these areas. SWEC has a long history of advocacy within the borderlands region. SWEC's members and staff have specific intentions to continue using and enjoying these areas in the future.

19. SWEC's members and staff regularly engage in recreational activities on lands located on, or immediately adjacent to, Fort Bliss, including Castner Range, the Culp Canyon Wilderness Study Area, the Franklin Mountains State Park, Hueco Tanks State Park, the Organ Mountains, Otero Mesa, and White Sands National Monument. SWEC's members and staff also live, work, or recreate near Fort Bliss and the Tornillo Camp.

20. If Defendants were to undertake rulemaking with respect to the Family Detention Policy, SWEC and its members would participate in the rulemaking by submitting comments, data, and arguments. SWEC and its members would also submit comments, data, and arguments in response to any environmental analysis performed in connection with this Policy.

21. Defendant JEFFERSON BEAUREGARD SESSIONS III is the Attorney General of the United States. Defendant Sessions signed the Zero-Tolerance Memorandum and has taken a leading role in advocating for, and publicly defending, the Family Detention Policy.

22. Defendant KIRSTJEN NIELSEN is Secretary of the U.S. Department of Homeland Security. Defendant Nielsen has overseen DHS's development and implementation of the Family Detention Policy.

23. Defendant JAMES N. MATTIS is Secretary of the U.S. Department of Defense. Defendant Mattis has overseen DOD's efforts to construct facilities to hold individuals detained under the Family Detention Policy.

24. Defendant Alex M. Azar II is Secretary of the U.S. Department of Health and Human Services. HHS operates detention camp for children who have been forcibly separated from their parents, including the camp at Tornillo, Texas.

## THE ADMINISTRATIVE PROCEDURE ACT

25. The Administrative Procedure Act ("APA") establishes certain procedures to govern rulemaking by federal agencies. Rulemaking is defined as the "process for formulating, amending, or repealing" "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C., §§ 551 (4), (5).

26. In general, federal agencies must provide members of the public with "[g]eneral notice" of any proposed rulemaking. *Id.*, § 553(b). The notice shall include information about how to participate in the rulemaking, as well as a "reference to the legal authority under which the rule is proposed" and "either the terms or substance of the proposed rule or a description of the subjects and issued involved." *Id.* After notice is given, the agency must "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation." *Id.*, § 553(c). An agency must

generally respond to public comments before finalizing the proposed rule. *See Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1203 (2015).

27. The APA creates several exceptions to the notice-and-comment requirement. Notice and comment is not required with respect to "a military or foreign affairs function of the United States" or "a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts." *Id.*, § 553(a). Also exempt are "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." *Id.*, § 553(b)(A). In addition, an agency may forgo notice-and-comment rulemaking "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." *Id.*, § 553(b)(B). Exceptions to the notice-and-comment requirement "must be narrowly construed." *Texas v. United States*, 809 F.3d 134, 171 (5th Cir. 2015) (citation omitted).

28. Courts have repeatedly held that policies designed to limit the government's enforcement discretion—including in the immigration context—are subject to the APA's notice-and-comment requirement.

29. Even where the notice-and-comment requirement does not apply, an agency must publish every substantive rule, statement of general policy, or interpretation of general applicability in the Federal Register. 5 U.S.C. § 552(a)(1).

…

…

…

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

Notice-and-Comment Violation – Zero-Tolerance Memorandum

30. The allegations in every preceding paragraph are incorporated by reference.

31. The APA requires federal agencies to provide members of the public with notice and the opportunity to comment before a new rule is issued.  5 U.S.C. § 553.  A "rule" is "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy."  *Id.*, §§ 551 (4), (5).

32. The Zero-Tolerance Memorandum is an "agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy."

33. No exception to the APA's notice-and-comment requirement applies to the Zero-Tolerance Memorandum.

34. Defendants issued the Zero-Tolerance Memorandum without first undertaking notice-and-comment rulemaking.

35. Accordingly, Defendants are in violation of the APA.

### SECOND CLAIM FOR RELIEF

Notice-and-Comment Violation – Family Detention Policy

36. The allegations in every preceding paragraph are incorporated by reference.

37. The APA requires federal agencies to provide members of the public with notice and the opportunity to comment before a new rule is issued.  5 U.S.C. § 553.  A "rule" is "an

agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." *Id.*, §§ 551 (4), (5).

38. Defendants' policy of indefinitely detaining any migrant charged with an immigration offense until resolution of that charge is an "agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy."

39. No exception to the APA's notice-and-comment requirement applies to the Family Detention Policy.

40. Defendants issued the Family Detention Policy without first undertaking notice-and-comment rulemaking.

41. Accordingly, Defendants are in violation of the APA.

## THIRD CLAIM FOR RELIEF

Freedom of Information Act

42. The allegations in every preceding paragraph are incorporated by reference.

43. Defendants have kept the American people in the dark about the nature of the Family Detention Policy. Defendants have repeatedly denied that the Policy exists, or sought to evade responsibility for it by falsely claiming that it is mandated by existing law. Defendants frequently contradicted themselves in public statements about the Policy.

44. The Freedom of Information Act, 5 U.S.C. § 552(a)(1), requires Defendants to publish in the Federal Register all "substantive rules of general applicability adopted as authorized

by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency."

45. In developing the Family Detention Policy, Defendants have promulgated substantive rules, statements of general policy, and interpretations of general applicability that have not been published in the Federal Register or otherwise disclosed to the public.

46. Accordingly, Defendants are in violation of 5 U.S.C. § 552(a)(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

1. Enjoin Defendants from enforcing the Zero-Tolerance Memorandum;

2. Enjoin Defendants from enforcing the Family Detention Policy;

3. Enjoin Defendants from constructing any new tent city or permanent detention facility;

4. Order Defendants to release any person who has been detained on misdemeanor immigration charges pursuant to the Family Detention Policy;

5. Order Defendants to publish in the Federal Register all operative rules, policies, and interpretations related to the Family Detention Policy;

6. Award Plaintiff reasonable attorneys' fees, expert fees, and costs; and

7. Grant such other relief as the Court may deem just and proper.

…

…

DATED: July 4, 2018   Respectfully submitted,

/s/ David Baake

DAVID R. BAAKE
New Mexico Bar # 150522
275 Downtown Mall
Las Cruces, NM 88001
Telephone: (575) 343-2782
david.baake@gmail.com

ATTORNEY FOR PLAINTIFF